## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------ x
In re VEECO INSTRUMENTS, INC.          :       Case No.: 7:05-md-01695 (CM)
SECURITIES LITIGATION                  :
------------------------------------------------------ x
------------------------------------------------------ x
THIS DOCUMENT RELATES TO               :
ALL ACTIONS                            :
------------------------------------------------------ x
```

## DECLARATION OF JEFFREY L. OSTERWISE IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION TO VACATE AND REVERSE THE DISCOVERY ORDER OF MAGISTRATE JUDGE GEORGE A. YANTHIS SIGNED JANUARY 24, 2007 PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 72

Jeffrey L. Osterwise, hereby declares as follows:

I, Jeffrey L. Osterwise, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746

that the following is true and correct:

1.      I am an associate of the law firm of Berger & Montague, P.C., lead counsel for Lead

Plaintiff in this litigation.

2.      I submit this Declaration in further support of Lead Plaintiff's Motion to Vacate and

Reverse the Discovery Order of Magistrate Judge George A. Yanthis Signed January 24, 2007

Pursuant to Federal Rule of Civil Procedure 72.

3.      Attached hereto as Exhibits are true and correct copies of the following:

| Exhibit No. | Description |
| --- | --- |
| A | Relevant portions of the Transcript of the Deposition of John Kiernan, dated February 27, 2007. |
| B | Relevant portions of the Rough Draft Transcript of the Deposition of John F. Rein, dated February 28, 2007. |

Dated: March 1, 2007

Jeffrey L. Osterwise

# EXHIBIT A

# ORIGINAL

1

1

2   UNITED STATES DISTRICT COURT

    SOUTHERN DISTRICT OF NEW YORK

3   CASE NO.: 05-MD-1695 (CM)

4   ---------------------------x

5   In Re:

6   VEECO INSTRUMENTS, INC.,

7   SECURITIES LITIGATION

8   ---------------------------x

9

10

11       VIDEOTAPED DEPOSITION of JOHN KIERNAN,

12   a witness called by counsel for Plaintiffs, taken

13   pursuant to the Federal Rules of Civil Procedure

14   before Eileen Mulvenna, CSR/RMR and Notary Public

15   within and for the State of New York, taken at

16   the office of Milberg Weiss & Bershad, One Penn

17   Plaza, New York, New York on February 27th, 2007,

18   commencing at 10:17 a.m.

19

20

21

22

23

24

25

166

John Kiernan

| | | |
|---|---|---|
| 1 | | |
| 2 | Q.     Where was your office at the time, | 15:17:02 |
| 3 | this late 2004, early 2005 time period?  Not in | 15:17:04 |
| 4 | Somerset, was it? | 15:17:10 |
| 5 | A.     No, my office is based in the Veeco | 15:17:12 |
| 6 | corporate office in Woodbury. | 15:17:16 |
| 7 | Q.     And were there occasions on which | 15:17:20 |
| 8 | Jefferson Wells people came to Woodbury? | 15:17:27 |
| 9 | A.     Yes, they did. | 15:17:31 |
| 10 | Q.     And what did the Jefferson Wells | 15:17:32 |
| 11 | people do when they came to Woodbury? | 15:17:34 |
| 12 | A.     Principally two items, I recall. | 15:17:42 |
| 13 | The first item was when they reviewed the work | 15:17:46 |
| 14 | prepared by management with respect to the | 15:17:50 |
| 15 | revenue adjustments.  All of those accounting | 15:17:52 |
| 16 | records are kept at the Woodbury facility.  When | 15:17:54 |
| 17 | they reviewed the work, they reviewed that at | 15:17:59 |
| 18 | Woodbury. | 15:18:02 |
| 19 | And second, any presentations or | 15:18:04 |
| 20 | reports that they would have given to the audit | 15:18:09 |
| 21 | committee, they may have done in person or by | 15:18:13 |
| 22 | phone in Woodbury.  I'm not sure. | 15:18:17 |
| 23 | Q.     Did the audit committee meet at | 15:18:19 |
| 24 | Woodbury? | 15:18:21 |
| 25 | A.     The audit committee did meet in | 15:18:23 |

167

John Kiernan

| | | |
|---|---|---|
| 1 | | |
| 2 | Woodbury.  I don't know, with respect to | 15:18:25 |
| 3 | specifically meetings during this time period, if | 15:18:29 |
| 4 | they were telephonic meetings or there were | 15:18:34 |
| 5 | meetings in Woodbury.  I don't recall. | 15:18:36 |
| 6 | Q.    I see. | 15:18:47 |
| 7 | What was the cost of what has been | 15:18:58 |
| 8 | described in Veeco documents as the investigation | 15:19:02 |
| 9 | that included -- that -- in which Jefferson Wells | 15:19:07 |
| 10 | did, in part which you've described and I assume | 15:19:10 |
| 11 | some other things -- | 15:19:14 |
| 12 | MR. HERFORT:  How much money was | 15:19:15 |
| 13 | Jefferson Wells paid? | 15:19:16 |
| 14 | MS. BRODERICK:  Oh, it wasn't only | 15:19:18 |
| 15 | Jefferson Wells that got paid. | 15:19:19 |
| 16 | Q.    Isn't that right? | 15:19:20 |
| 17 | MR. HERFORT:  What is the -- how is | 15:19:24 |
| 18 | this likely to lead to discoverable | 15:19:25 |
| 19 | evidence? | 15:19:27 |
| 20 | Q.    You can answer the question. | 15:19:28 |
| 21 | MR. HERFORT:  Wait a minute.  Wait. | 15:19:29 |
| 22 | You've got to put some parameters on | 15:19:31 |
| 23 | your question.  What costs are you talking | 15:19:33 |
| 24 | about? | 15:19:34 |
| 25 | Q.    There was an investigation; right? | 15:19:38 |

168

                    John Kiernan

2    And Jefferson Wells got paid and at least one        15:19:39

3    other entity got paid.                               15:19:43

4              MR. HERFORT:  Who is that?                  15:19:45

5              MS. BRODERICK:  You know perfectly          15:19:46

6         well.                                           15:19:47

7         Q.    What was the cost of the                  15:19:49

8    investigation?                                       15:19:50

9              MS. BRODERICK:  Let's not waste            15:19:51

10        time.                                           15:19:52

11             MR. HERFORT:  I'm going to instruct        15:19:52

12        him not to answer.                              15:19:52

13             MS. BRODERICK:  You are?                    15:19:54

14             MR. HERFORT:  Yes.                          15:19:55

15             MS. BRODERICK:  You know you're not        15:19:55

16        supposed to do that.                            15:19:56

17             MR. HERFORT:  I think that gets into        15:19:57

18        the work product area.                          15:19:57

19             MS. BRODERICK:  The cost of an             15:19:58

20        investigation --                                15:20:00

21             MR. HERFORT:  The checks that they         15:20:00

22        wrote to Jefferson Wells and Kaye Scholer       15:20:01

23        for work product --                             15:20:04

24             MS. BRODERICK:  For one thing, for         15:20:05

25        God's --                                        15:20:06

169

John Kiernan

| | | |
|---|---|---|
| 1 | | |
| 2 | MR. HERFORT:  Carole, keep your | 15:20:07 |
| 3 | mouth shut and let me listen to him.  Okay? | 15:20:08 |
| 4 | You've got to cool it.  I want to -- let's | 15:20:11 |
| 5 | do this professionally.  All right? | 15:20:13 |
| 6 | MS. BRODERICK:  You should start. | 15:20:15 |
| 7 | MR. HERFORT:  You start too. | 15:20:16 |
| 8 | Let me talk to -- Mr. Wallin wants | 15:20:17 |
| 9 | to talk to me.  Let me talk to him.  Don't | 15:20:18 |
| 10 | start yelling. | 15:20:21 |
| 11 | (Discussion off the record.) | 15:20:21 |
| 12 | (Counsel leave the room.) | 15:20:24 |
| 13 | THE VIDEOGRAPHER:  3:21 p.m.  We're | 15:20:40 |
| 14 | going off the record. | 15:20:41 |
| 15 | (Recess from the record.) | 15:20:43 |
| 16 | THE VIDEOGRAPHER:  Time is 3:30 p.m. | 15:30:19 |
| 17 | We're back on the record. | 15:30:21 |
| 18 | MR. HERFORT:  Miss Broderick has | 15:30:23 |
| 19 | some questions involving numbers, and let's | 15:30:24 |
| 20 | proceed and have them -- | 15:30:26 |
| 21 | MS. BRODERICK:  Would you read the | 15:30:28 |
| 22 | question back and maybe this time he'll | 15:30:28 |
| 23 | answer it. | 15:30:31 |
| 24 | MR. HERFORT:  -- have them asked. | 15:30:32 |
| 25 | (Record read.) | 15:30:42 |

170

John Kiernan

| | |
|---|---|
| A.    My recollection was in the range of | 15:30:42 |
| about $800,000. | 15:30:46 |
| Q.    And is that cost approximately what | 15:31:00 |
| Veeco expected when the investigation was | 15:31:01 |
| started? | 15:31:05 |
| A.    I don't recall what our initial | 15:31:09 |
| estimate was. | 15:31:11 |
| Q.    Well, let's come at it another way. | 15:31:14 |
| Did the cost of the investigation | 15:31:16 |
| come as a shock to you?  And by "you," I mean | 15:31:18 |
| Veeco and not you personally, Mr. Kiernan. | 15:31:20 |
| A.    No, I don't believe so. | 15:31:25 |
| Q.    And what was Veeco getting for the | 15:31:29 |
| $800,000? | 15:31:30 |
| MR. HERFORT:  Let's just -- haven't | 15:31:34 |
| you really covered at some length the | 15:31:39 |
| actual work that was done? | 15:31:41 |
| MS. BRODERICK:  Let me decide. | 15:31:43 |
| MR. HERFORT:  You do have some | 15:31:45 |
| rights, that's true. | 15:31:46 |
| MS. BRODERICK:  Yes, I do.  You | 15:31:47 |
| know, what amendment was it that gave us | 15:31:48 |
| the vote? | 15:31:50 |
| MR. HERFORT:  It's not what we're | 15:31:51 |

171

John Kiernan

1
2    talking about.                              15:31:52
3          MS. BRODERICK:  I know you'd rather   15:31:54
4    appeal it, but it's not for you to do.      15:31:55
5          MR. HERFORT:  I really wouldn't.  It  15:31:57
6    makes for an interesting political system   15:31:58
7    to have characters like you voting.         15:32:01
8          MS. BRODERICK:  Careful or you'll     15:32:03
9    get Hillary Clinton.                        15:32:04
10         Now, let him answer the question.     15:32:07
11         MS. HIRSH:  I'm sorry.                15:32:09
12         MR. HERFORT:  Maybe I like --         15:32:11
13         MS. HIRSH:  Right after reading the   15:32:13
14   headline about the Dow falling of 500       15:32:14
15   points.                                     15:32:19
16         MS. BRODERICK:  Oh, really?  500?     15:32:19
17         MS. HIRSH:  Something to do with      15:32:20
18   China.                                      15:32:21
19         MS. BRODERICK:  Let's let him answer  15:32:23
20   the question.  You know you're not allowed  15:32:24
21   to instruct him not to answer except on the 15:32:26
22   grounds of privilege.                       15:32:28
23         MR. HERFORT:  You might be getting    15:32:29
24   near.                                       15:32:30
25         MS. BRODERICK:  Well, near is not     15:32:30

172

John Kiernan

| | |
|---|---|
| good enough. | 15:32:31 |

MR. HERFORT:  You were interested,    15:32:32

having gone over the basic work that    15:32:32

they've done for the last hour and a half.    15:32:35

You want him to repeat it again?    15:32:36

MS. BRODERICK:  No.  I asked him a    15:32:39

question.  If you're going to instruct him    15:32:40

not to answer, at your peril, then do so;    15:32:41

if you're not, then --    15:32:44

MR. HERFORT:  If you can answer the    15:32:44

question without getting into the    15:32:45

impressions and conclusions of the people    15:32:46

who did the work for you, answer it.    15:32:47

A.    My understanding is that of the    15:32:51

$800,000, that was principally paid to three    15:32:54

firms.  That it was paid to Ernst & Young for    15:33:02

additional audit work that they performed.  It    15:33:07

was paid to Kaye Scholer to lead the    15:33:12

investigation.  And it was paid to Jefferson    15:33:15

Wells for the work they performed.    15:33:18

Q.    And is it -- what was your    15:33:21

understanding about -- I understand who you paid    15:33:26

it to -- about what you got for your $800,000?    15:33:30

It's a lot of money.    15:33:35

173

John Kiernan

| | | |
|---|---|---|
| 1 | | |
| 2 | MR. HERFORT:  Read the question back | 15:33:37 |
| 3 | again, please. | 15:33:38 |
| 4 | (Record read.) | 15:33:39 |
| 5 | MR. HERFORT:  I'll object as to | 15:33:55 |
| 6 | form. | 15:33:55 |
| 7 | I think this has been gone over and | 15:33:56 |
| 8 | over and over again for the last two hours. | 15:34:00 |
| 9 | MS. BRODERICK:  Cry. | 15:34:03 |
| 10 | A.    My recollection is that each one of | 15:34:07 |
| 11 | those three firms billed to Veeco on an hourly | 15:34:08 |
| 12 | basis for the work that they performed. | 15:34:13 |
| 13 | Q.    Let me put it a different way. | 15:34:16 |
| 14 | What purpose -- what benefit did you | 15:34:20 |
| 15 | derive for the $800,000 that you paid to these | 15:34:25 |
| 16 | people? | 15:34:30 |
| 17 | A.    The audit committee engaged Kaye | 15:34:36 |
| 18 | Scholer to perform an investigation under their | 15:34:40 |
| 19 | direction, and they're reporting directly into | 15:34:42 |
| 20 | the audit committee.  I'm not privileged to what | 15:34:47 |
| 21 | they performed in that regard. | 15:34:50 |
| 22 | Work performed by Ernst & Young | 15:34:56 |
| 23 | included additional audit procedures to review | 15:34:59 |
| 24 | the adjustments and the account analysis that was | 15:35:06 |
| 25 | performed that was outside of the original scope | 15:35:08 |

174

John Kiernan

1  

2   of their intended audit work, and that Ernst &     15:35:10

3   Young did these additional procedures in order to     15:35:14

4   be able to render an opinion on the financial     15:35:17

5   statements, which they ended up rendering their     15:35:20

6   opinion on the financial statements.     15:35:24

7         Jefferson Wells reviewed the work     15:35:28

8   that was performed by management and also did     15:35:32

9   forensic work.     15:35:35

10      Q.     And what benefit did the company     15:35:37

11   derive from that?     15:35:39

12      A.     I think that was -- the work that     15:35:52

13   was performed by Jefferson Wells enabled Ernst &     15:35:54

14   Young to be able to render their opinion on     15:36:02

15   Veeco's financial statements, and that was a     15:36:09

16   requirement.     15:36:13

17      Q.     Did the work done by Jefferson Wells     15:36:16

18   also enable Ernst & Young to render their opinion     15:36:19

19   on Veeco's internal controls?     15:36:24

20      A.     I believe they considered the work     15:36:36

21   performed, but I don't know what -- the exact     15:36:37

22   reliance that they may have attributed to the     15:36:41

23   work performed by Jefferson Wells.     15:36:45

24      Q.     Okay. Did there come a time in the     15:36:47

25   third quarter of 2004 that you, Mr. Kiernan,     15:37:44

# EXHIBIT B

ROUGH ASCII VEECO-REIN 2-28-07

1

```
1        UNPROOFREAD/UNCERTIFIED ROUGH DRAFT ONLY

2    Reporter's Name:  EILEEN MULVENNA, CSR/RMR
     -------------------------------------------------
3    REALTIME/INTERACTIVE ROUGH DRAFT TRANSCRIPT
       AND/OR UNCERTIFIED REALTIME ASCII DISCLAIMER
4    -------------------------------------------------
             IMPORTANT NOTICE:
5            - AGREEMENT OF PARTIES -
        PROCEEDING BEYOND THIS PAGE CONSTITUTES
6    ACCEPTANCE OF AND AGREEMENT WITH THE FOLLOWING
                TERMS AND CONDITIONS
7    -------------------------------------------------
     We, the party working with realtime and rough
8    draft transcripts and/or ASCII disks, understand
     that if we choose to use the realtime rough draft
9    screen, the rough printout, or the unedited ASCII
     disk, that we are doing so with the understanding
10   that all rough drafts are uncertified copies
     and...
11
     WE AGREE THEY WILL BE BILLED TO AND PAID FOR BY
12   US

13   We further agree not to comment in the record on,
     share, give, copy, scan, fax or in any way
14   distribute this realtime rough draft or ASCII in
     any form (written or computerized) to any party.
15   However, our own experts, co-counsel, and staff
     may have limited internal use of same with the
16   understanding that we agree to destroy our
     realtime rough drafts and/or any computerized
17   form, if any, and replace it with the final
     transcript/ASCII disk upon its completion.
18
     REPORTER'S NOTE:
19
     Since this deposition has been recorded by me in
20   realtime and is in rough draft form, please be
     aware that there may be discrepancies regarding
21   page and line number when comparing the realtime
     screen, the rough draft/uncertified transcript,
22   rough draft/uncertified ASCII disk, and the final
     transcript/ASCII disk.
23

24

25
```

2

```
1        UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2    Also please be aware that the realtime screen and
     the uncertified rough draft transcript/ASCII disk
3    may contain untranslated steno, reporter's notes
     as parentheticals, misspelled proper names,
4    incorrect or missing Q/A symbols or punctuation,
     and/or nonsensical English word combinations.
                    Page 1
```

ROUGH ASCII VEECO-REIN 2-28-07
5    All such entries will be correct on the final,
     certified transcript/ASCII disk.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                              3

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2              THE VIDEOGRAPHER:   Good morning.        09:27:10

3    We're on the record.  Today's date is             10:13:09

4    February 28, 2007.  The time is 10:15 a.m.        10:13:11

5                                                       10:13:15

6              This is the videotape deposition of     10:13:16

7    John F. Rein in the case of In Re: Veeco          10:13:19

8    Instruments, Inc., Securities Litigation.         10:13:25

9    Case No. 05-MD-1695.  This case is part of        10:13:27

10   the United States District Court for the          10:13:33
                         Page 2

ROUGH ASCII VEECO-REIN 2-28-07

25          the record.   The time is 5:01 p.m.
                                                              230          16:58:18

1       UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2    BY MS. BRODERICK:                                          16:58:22

3          Q.      How much did Veeco spend on the            16:58:26

4    investigation that you described in the affidavit         16:58:30

5    that you swore to that was filed in this action          16:58:43

6    in the federal District Court?                            16:58:48

7               MR. SERIO:   I'm sorry could I have           16:58:56

8          that read back, please.                            16:58:57

9               (Record read.)                                16:59:07

10              MR. SERIO:   Objection to form.  You          16:59:08

11         mean outside counsel fees?                          16:59:09

12              MS. BRODERICK:   The whole thing.              16:59:11

13         A.      I think there was a disclosure in          16:59:16

14   the 10-K that enumerated a number like eight or          16:59:17

15   900,000 but I don't specifically recall.                 16:59:23

16         Q.      And wasn't the product that                16:59:36

17   investigation needed for you to obtain Ernst &           16:59:43

18   Young's opinions on Veeco's financial statements         16:59:51

19   and its internal controls?                                16:59:57

20              MR. SERIO:   Objection to the form.           17:00:00

21         A.      I'm sorry, what investigation are          17:00:02

22   you referring to?                                         17:00:04

23         Q.      The financial statement -- the             17:00:06

24   investigation you just testified about, the cost         17:00:08

25   of which you said was disclosed in Veeco's public        17:00:10
                                                              231

1       UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2    document.                                                 17:00:15

3          A.      The audit committee selected Kaye          17:00:16

4    Scholer and Jefferson Wells to assist in                  17:00:21
                       Page 190

ROUGH ASCII VEECO-REIN 2-28-07

5    litigation, anticipation of litigation              17:00:28
6    preparation to evaluate and to give counsel and     17:00:32
7    guidance to the company.  In addition to            17:00:36
8    performing some analysis and forensic work in       17:00:39
9    regard -- in regard to ensuring that the accounts   17:00:46
10   were properly stated and the financial statements   17:00:52
11   were properly stated.                               17:00:57
12               MS. BRODERICK:  Could you read the      17:00:59
13       question back.                                  17:00:59
14               (Record read.).                         17:01:00
15               MR. SERIO:  Objection to form.          17:01:18
16               MS. BRODERICK:  It's product of the     17:01:20
17       investigation.                                  17:01:21
18               THE REPORTER:  (Nods head in the        17:01:24
19       affirmative.)                                   17:01:24
20               MR. SERIO:  Could you hear that?  I     17:01:26
21       couldn't hear it when you were reading it       17:01:27
22       back.                                           17:01:29
23               (Discussion off the record.)            17:01:47
24               (Record read.)                          17:01:48
25               MR. SERIO:  Objection to form.          17:01:57
                                              232

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY
2         Q.     You can answer the question?           17:02:13
3         A.     I think I thought I did answer the     17:02:15
4    question, but a portion of that investigative      17:02:17
5    activity was used to assist us in -- us being      17:02:23
6    Veeco financial management in creating and         17:02:29
7    correcting -- creating the required entries and    17:02:33
8    adjustments and developing financial statements    17:02:39
9    on a correct basis and so a portion of that        17:02:46

ROUGH ASCII VEECO-REIN 2-28-07

10    activity was in that -- in assistance in that              17:02:52
11    regard.  And that was required before Ernst &            17:02:56
12    Young could audit our and given an opinion on our        17:02:59
13    December 31, 2004, financial statements.                 17:03:03
14            Q.      So it was necessary for Ernst &          17:03:06
15    Young's opinion; right?                                  17:03:08
16                    MR. SERIO:  Objection to the form.       17:03:10
17            A.      A portion of the activities were         17:03:11
18    necessary.                                               17:03:13
19            Q.      That's the audit opinion; is that        17:03:14
20    correct?                                                 17:03:16
21                    MR. SERIO:  Objection to the form.       17:03:16
22            Q.      Meaning the opinion on Ernst &           17:03:18
23    Young -- on Veeco's financial statements; right?         17:03:20
24            A.      We --                                    17:03:27
25                    (Telephone interruption.)                17:03:29
                                                        233

1     UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY
2                     MS. BRODERICK:  Good grieve.  I          17:03:32
3             thought it was his stomach.                      17:03:34
4             A.      I'd like to just clarify what the        17:03:41
5     question --                                              17:03:43
6             Q.      Okay.  You described financially --      17:03:44
7     financial statement activity that was being             17:03:49
8     performed by Jefferson Wells; isn't that correct?        17:03:51
9             A.      Well, I described financial activity     17:03:54
10    was being performed by Veeco financial management       17:03:56
11    and there was some assistance based on some of          17:04:01
12    the work that Jefferson Wells did.                       17:04:03
13            Q.      Yes.  And then you testified, did        17:04:06
14    you not that had that activity was necessary for        17:04:08
15    Ernst & Young to issue its opinion; is that             17:04:13
                          Page 192

ROUGH ASCII VEECO-REIN 2-28-07

| 16 | correct? | 17:04:15 |
| 17 | MR. SERIO:  Objection to the form. | 17:04:16 |
| 18 | (Telephone interruption.) | 17:04:17 |
| 19 | MS. BRODERICK:  Turn it off. | 17:04:20 |
| 20 | MR. SERIO:  Sorry. | 17:04:24 |
| 21 | MS. BRODERICK:  How many do you | 17:04:25 |
| 22 | have? | 17:04:26 |
| 23 | (Telephone interruption.) | 17:04:30 |
| 24 | (Discussion off the record.) | 17:04:40 |
| 25 | Q.    Okay? | 17:04:48 |

234

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

| 2 | A.    It was necessary for Veeco | 17:04:48 |
| 3 | management to get their financial accounts and | 17:04:50 |
| 4 | financial statements correct before Ernst & Young | 17:04:54 |
| 5 | would certify to our statements or we could ask | 17:04:56 |
| 6 | them to review and audit the underlying financial | 17:05:01 |
| 7 | statements.  And part of the Jefferson Wells' | 17:05:05 |
| 8 | activity was utilized to assist us in verifying | 17:05:09 |
| 9 | that the accounts were correct. | 17:05:15 |
| 10 | Q.    So part of the Jefferson Wells' | 17:05:16 |
| 11 | activity was an activity which was engaged in for | 17:05:18 |
| 12 | the purpose of correcting records which was | 17:05:28 |
| 13 | necessary to do to get Ernst & Young to certify | 17:05:31 |
| 14 | Veeco's financial statements; is that correct? | 17:05:37 |
| 15 | MR. SERIO:  Objection to the form. | 17:05:40 |
| 16 | A.    It was -- we utilized Jefferson | 17:05:43 |
| 17 | Wells' activity to verify that what management | 17:05:47 |
| 18 | had come up with, which is what Ernst & Young was | 17:05:51 |
| 19 | looking at, was accurate. | 17:05:55 |
| 20 | Q.    Okay.  So part of what Jefferson | 17:05:58 |

Page 193

ROUGH ASCII VEECO-REIN 2-28-07

| | | |
|---|---|---|
| 21 | Wells was doing was used to get Ernst & Young to | 17:06:00 |
| 22 | issue an opinion on Veeco's financial statements; | 17:06:07 |
| 23 | isn't that right? | 17:06:10 |
| 24 | MR. SERIO:  Objection to the form. | 17:06:11 |
| 25 | Asked and answered. | 17:06:12 |

235

| | | |
|---|---|---|
| 1 | UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY | |
| 2 | A.    I think I did answer it. | 17:06:13 |
| 3 | Q.    It's yes or no; is that correct? | 17:06:15 |
| 4 | MR. SERIO:  Objection to the form. | 17:06:17 |
| 5 | A.    I don't think it is.  I don't think | 17:06:18 |
| 6 | it is yes or no.  I think I gave my explanation. | 17:06:19 |
| 7 | Q.    What was the Jefferson Wells' work | 17:06:24 |
| 8 | on Veeco's fixing up TurboDisc's records used | 17:06:28 |
| 9 | for? | 17:06:35 |
| 10 | MR. SERIO:  Objection to the form. | 17:06:37 |
| 11 | A.    I described that Veeco management -- | 17:06:38 |
| 12 | financial management did the analysis and the | 17:06:42 |
| 13 | correction of the errors that were uncovered. | 17:06:49 |
| 14 | And that a portion of what Jefferson Wells' work | 17:06:52 |
| 15 | was utilized to verify that the amounts and | 17:06:58 |
| 16 | correction of errors that Veeco management, | 17:07:04 |
| 17 | financial management had established were in fact | 17:07:07 |
| 18 | verified by some of the work that Jefferson Wells | 17:07:12 |
| 19 | did. | 17:07:14 |
| 20 | Q.    And is it also correct that Veeco | 17:07:16 |
| 21 | gave Ernst & Young Jefferson Wells' work to show | 17:07:19 |
| 22 | Ernst & Young that Jefferson Wells agreed with | 17:07:27 |
| 23 | Veeco management? | 17:07:31 |
| 24 | MR. SERIO:  Objection to the form. | 17:07:32 |
| 25 | A. | 17:07:37 |

236

Page 194

ROUGH ASCII VEECO-REIN 2-28-07

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY
2            THE WITNESS:  Repeat that, please.        17:07:37
3        I just like to make sure I understand every   17:07:38
4        word in that question.                        17:07:41
5            (Record read.).  Select                   17:07:56
6        A.      Selected schedules that management     17:08:06
7    used in verifying its correction of the errors in  17:08:07
8    the accounts may have been given to Ernst & Young  17:08:15
9    and some of those work papers may have come from   17:08:18
10   Jefferson Wells.                                   17:08:21
11       Q.      Wait a minute.  Did Veeco give Ernst    17:08:24
12   & Young any documents that showed that Jefferson   17:08:31
13   Wells agreed with Veeco management about Veeco     17:08:34
14   management's correction of TurboDisc accounts?     17:08:40
15           MR. SERIO:  Objection to form.             17:08:46
16       A.      I know that there was a report that     17:08:47
17   was prepared for the audit committee and for Kaye  17:08:48
18   Scholer and I believe that that report was shared  17:08:52
19   with Ernst & Young.  I don't know what purpose     17:08:56
20   that Ernst & Young found with that report.  I      17:08:59
21   also know that were certain analysis there were    17:09:03
22   done by Jefferson Wells personnel that were        17:09:06
23   utilized by Veeco management and may have been     17:09:10
24   reviewed by Ernst & Young in establishing that     17:09:12
25   the accounts were proper and the financial         17:09:14
                                            237

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY
2    statements were proper.                            17:09:16
3        Q.      And those analyses said we,             17:09:18
4    Jefferson Wells, agree with Veeco's management;    17:09:21
5    is that correct?                                   17:09:23

Page 195

ROUGH ASCII VEECO-REIN 2-28-07

```
  6                    MR. SERIO:   Objection to the form.        17:09:24
  7          I don't -- I think I would instruct him not          17:09:26
  8          to answer as to the substance of what the            17:09:29
  9          Jefferson Wells report said.  So you don't           17:09:32
 10          immediate to answer.                                 17:09:35
 11              Q.     And you refuse to answer?                  17:09:38
 12              A.     On advice of counsel, I --                 17:09:40
 13              Q.     Okay.  Are you prepared to tell me         17:09:42
 14          whether Jefferson Wells' work played any part in     17:09:45
 15          obtaining Ernst & Young's audit opinion on           17:09:53
 16          Veeco's financial statements?                        17:09:58
 17              A.     I think --                                 17:09:59
 18                     MR. SERIO:   Objection to the form.        17:10:00
 19              A.     I think I previously described that.       17:10:01
 20              Q.     No, this is a yes or no.  So far as        17:10:04
 21          you're aware, did Jefferson Wells' work play any     17:10:06
 22          part in obtaining Ernst & Young's audit opinion      17:10:09
 23          on Veeco's financial statements?                     17:10:14
 24                     MR. SERIO:   Objection to the form.        17:10:15
 25              A.     Jefferson Wells performed certain          17:10:17
                                                     238
```

```
  1     UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY
  2     analysis and assisted Veeco management in            17:10:20
  3     preparing the corrected errors and financial         17:10:23
  4     statements and that information was presented to     17:10:26
  5     Ernst & Young prior to them issuing their            17:10:31
  6     opinion.                                             17:10:32
  7         Q.     Okay.  Now, Ernst & Young issued          17:10:34
  8     another opinion in connection with Veeco's 2004      17:10:39
  9     10-K, didn't they?                                   17:10:45
 10                MR. SERIO:   Objection to the form.        17:10:47
 11         A.     Could you tell me what you're             17:10:48
                          Page 196
```