UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
:
IN RE VEECO INSTRUMENTS INC. :
SECURITIES LITIGATION : 05 MD 1695 (CM)(GAY)
:
------------------------------------- x
:
THIS DOCUMENT RELATES TO: :
ALL ACTIONS :
:
------------------------------------- x

# DECLARATION OF J. ROSS WALLIN IN SUPPORT OF DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION TO COMPEL DEFENDANTS TO PRODUCE FURTHER ELECTRONIC DISCOVERY

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Phone: (212) 351-4000
Fax: (212) 351-4035

*Attorneys for Defendants Veeco Instruments Inc., Edward H. Braun, John F. Rein, Jr. and John P. Kiernan*

March 5, 2007

J. ROSS WALLIN declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a lawyer with the law firm of Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), outside counsel to Defendants Veeco Instruments Inc. ("Veeco"), Edward H. Braun, John F. Rein, Jr., and John P. Kiernan in this action.

2. On April 6, 2006, Lead Plaintiff served its First Request for Production of Documents Directed to All Defendants.

3. Lead Plaintiff served its request despite not having discussed or proposed entering into an electronic discovery protocol with Defendants.

4. On May 9, 2006, Defendants served Objections and Responses to Lead Plaintiff's document requests, which included objections that the requests were unduly burdensome and imposed requirements beyond those contemplated by the Federal Rules of Civil Procedure.

5. Document discovery proceeded according to schedule and was substantially completed by the end of August 2006, less than five months after Lead Plaintiff served its document requests.

6. During this period, Lead Plaintiff did not contest Defendants' objections, did not meet and confer, did not ask Defendants whether they were searching their backup tapes, did not inquire into what data sources Defendants were searching, did not inquire into which custodians they intended to search or what search terms they planned to use, and, consistent with its decision to forego entering into an electronic discovery protocol, appeared to take no interest in Defendants' discovery plan and methodology.

7. Lead Plaintiff did not express any concern about the completeness of Defendants' document production until it sent a letter to Defendants on January 5, 2007, more than nine

months after Lead Plaintiff served its first request for production of documents. Moreover, Lead Plaintiff did not ask whether Defendants had produced documents from backup tapes until January 30, 2007. Attached hereto as Exhibit A is a true and correct copy of a letter from Phyllis Parker to Robert Serio and Ross Wallin, dated January 30, 2007.

8. The next day, on January 31, 2007, Lead Plaintiff issued deposition notices for the CEO, CFO, and Corporate Controller of Veeco (the Individual Defendants) for February 23, February 28, and February 15, respectively.

9. In a letter dated February 2, 2007, Defendants told Lead Plaintiff that it was not restoring and searching backup tapes because it was unduly burdensome and impractical, particularly given Lead Plaintiff's undue delay in raising the issue. Attached hereto as Exhibit B is a true and correct copy of a letter from Ross Wallin to Phyllis Parker, dated February 2, 2007.

10. Defendants put a litigation hold in place with respect to this litigation to ensure, among other things, that documents on electronic media were not destroyed or transferred to a less accessible format.

11. In response to Lead Plaintiff's document requests, Defendants identified dozens of current and former employees that it judged to be likely sources of responsive documents, including all of the Individual Defendants.

12. In addition, Defendants, through Gibson Dunn, hired an outside consulting firm named Merrill Corporation ("Merrill") that specializes in the collection of electronic data to assist in the collection of electronic files.

13. At the direction of Gibson Dunn, Veeco information technology personnel and Merrill collected electronic files maintained by those persons judged to be likely sources of responsive documents from computer hard drives and various Veeco servers. The collection

included a broad variety of electronic file types, including but not limited to emails, deleted emails, Word documents, Excel files and PowerPoint presentations. Employees were not provided with any discretion concerning which electronic files to provide. Defendants collected all available electronic files, containing millions of pages of data. Defendants then filtered the documents collected as a result of this process through a list of over thirty broad search terms.

14. In total, Defendants reviewed in excess of 600,000 pages of hard copy and electronic files for privilege and responsiveness. Of these documents, 520,000 pages were from electronic media, and hundreds of thousands of those pages concerned one or more of the following seven individuals from whom Lead Plaintiff now seeks information on backup tapes: Edward H. Braun, John F. Rein, Jr., John Kiernan, Gary Reifert, Scott Glassman, Lawrence Karp and Frances Scally.

15. Defendants then produced approximately 181,000 pages of responsive documents to Lead Plaintiff and Derivative Plaintiffs, more than 131,000 pages of which were electronic files. The vast bulk of the documents – over 174,000 pages – were produced before the end of August 2006. Approximately 56,000 pages of the electronic files produced by Defendants (and approximately 43% of the total produced electronic files) were from the files of, or otherwise concerned Messrs. Braun, Rein, Kiernan, Reifert, Glassman, and Karp and Ms. Scally.

16. Defendants have produced approximately 6,100 pages relating to Mr. Braun (3,100 pages of which are communications to or from Mr. Braun); 20,300 relating to Mr. Rein (8,800 pages of which are communications to or from Mr. Rein); 49,300 relating to Mr. Kiernan; 25,400 relating to Mr. Reifert; 15,100 relating to Mr. Karp; 10,800 relating to Mr. Glassman; and 8,800 relating to Ms. Scally. Many documents produced by Defendants concern one or more of these persons, but even accounting for this overlap, Defendants produced approximately 73,000

3

pages of documents concerning Mssrs. Braun, Rein, Keirnan, Reifert, Karp, and Glassman and Ms. Scally.

17. The total cost incurred by Defendants just to collect and filter the electronic documents was approximately $50,000. The costs associated with reviewing the documents for privilege and responsiveness were many hundreds of thousands of dollars more.

18. Included in this document production were hundreds of documents that go directly to the key issues in the case, including: (1) detailed workpapers compiled by Veeco's Manager of Internal Audit, Mr. Reifert, who was primarily responsible for the discovery and quantification of the inventory accounting errors corrected in Veeco's restatement; (2) other workpapers supporting the adjustments reflected in the restatement; (3) emails between Mr. Reifert and the TurboDisc divisional controller concerning TurboDisc's controls; (4) detailed communications between Veeco management and Veeco's Audit Committee concerning the status of Sarbanes-Oxley testing at TurboDisc, as well as Veeco's other business units; (5) communications between Veeco's Corporate Controller, Mr. Kiernan, and the TurboDisc divisional controller concerning staffing requirements; and (6) various emails and other documents (some which were sent to or received by Mr. Rein), concerning TurboDisc inventory levels.

19. Defendants took appropriate steps to preserve its backup tapes throughout the relevant time period, but did not restore or search these backup tapes.

20. Defendants determined that restoration of the backup tapes was unreasonable because the process is extremely burdensome, costly and time-consuming. Defendants had strong reason to believe, and continue to believe, that a significant volume of highly relevant

documents were available from more readily accessible sources such as individual computers and files archived on various Veeco servers.

21.  Lead Plaintiff's current request would require Defendants to restore approximately forty-five backup tapes. Defendants would then have to load the data from the tapes onto servers, cull through the data to identify documents concerning the seven individuals identified by Lead Plaintiff, and then filter that data through a list of search terms. Based on a quote provided by Merrill, Defendants estimate that this process would cost approximately $124,000. This amount does not include the significant costs that would be associated with reviewing the documents for privilege and responsiveness.

Executed on March 5, 2007

_____
J. Ross Wallin