# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------- x
In re VEECO INSTRUMENTS INC.          :      Case No.: 7:05-md-01695 (CM)(GAY)
SECURITIES LITIGATION                 :
------------------------------------------------- x
------------------------------------------------- x
THIS DOCUMENT RELATES TO              :
ALL ACTIONS                           :
------------------------------------------------- x
```

### LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT

BERGER & MONTAGUE, P.C.
Sherrie R. Savett
Carole A. Broderick
Arthur Stock
Phyllis M. Parker
Jeffrey L. Osterwise
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

*Lead Counsel for Lead Plaintiff*
*Steelworkers Pension Trust and the Class*

# TABLE OF CONTENTS

I.     FACTUAL BACKGROUND  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       A.     The Procedural History of the Litigation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       B.     Extensive Discovery Was Conducted  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       C.     Extensive Motion Practice Was Conducted . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       D.     Class Certification Was Granted And A Notice Of Pendency Of The
              Action Was Sent To The Class  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       E.     The Merits of the Case Are Sharply Disputed  . . . . . . . . . . . . . . . . . . . . . . . . 9

       F.     The Terms Of The Proposed $5,500,000 Settlement . . . . . . . . . . . . . . . . . . . . 10

       G.     The Settlement Was The Product Of Arm's-Length Negotiation  . . . . . . . . . . . 11

II.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       A.     The Motion For Preliminary Approval Of The Proposed Class Action
              Settlement Meets The Relevant Legal Standard  . . . . . . . . . . . . . . . . . . . . . . . 11

              1.     The Role Of The Court  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

              2.     Criteria To Be Considered In Deciding Preliminary Approval Of
                     The Class Settlement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III.   THE PLAN OF ALLOCATION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV.    SECOND OPPORTUNITY TO OPT-OUT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

V.     THE PROPOSED CLASS NOTICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VI.    CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

i

## TABLE OF AUTHORITIES

*Baldwin-United Corp.*,
    105 F.R.D. 475 (S.D.N.Y. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Bano v. Union Carbide Corp.*,
    273 F.3d 120 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Banyai v. Mazur*,
    2007 U.S. Dist. LEXIS 22342 (S.D.N.Y. March 27, 2007) . . . . . . . . . . . . . . . . . . . . 15, 16

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Dura Pharm. Inc. v. Broudo*,
    544 U.S. 336 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re American Bank Note Holographics, Inc. Sec. Litig.*,
    127 F. Supp.2d 418 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16, 19

*In re Excess Value Ins. Coverage Litig.*,
    2004 U.S. Dist. LEXIS 14822 (S.D.N.Y. July 30, 2004) . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Initial Pub. Offering Sec. Litig*,
    2007 U.S. Dist. LEXIS 19632 (S.D.N.Y. Feburary 28, 2007) . . . . . . . . . 11, 12, 13, 21, 22

*In re Med. X-Ray Film Antitrust Litig.*,
    1997 U.S. Dist. LEXIS 21936 (E.D.N.Y. Dec. 10, 1997) . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Prudential Sec. Inc. Ltd. Pships Litig.*,
    163 F.R.D. 200 (S.D.N.Y.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 16, 17, 22

*Lyons v. Marrud, Inc.*,
    1972 U.S. Dist. LEXIS 13401 (S.D.N.Y. June 6, 1972) . . . . . . . . . . . . . . . . . . . . . . . . 14

*Maley v. Del Global Technologies Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 19

*Milstein v. Werner*,
    57 F.R.D. 515 (S.D.N.Y. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*NASDAQ Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

*Philadelphia Housing Auth. v. Am. Radiator & Standard Sanitary Corp.*,
  323 F. Supp. 364 (E.D. Pa. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Reed v. General Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Strougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## FEDERAL STATUTES

15 U.S.C. §78 u-4 (a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 16, 23

15 U.S.C. § 78u-4(a)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Lead Plaintiff Steelworkers Pension Trust ("Lead Plaintiff") respectfully submits this memorandum of law in support of its unopposed motion for preliminary approval of a proposed $5,500,000 class action settlement.  By this motion, and pursuant to the terms of the Stipulation of Settlement (the "Stipulation") and its attachments, Lead Plaintiff seeks: (i) preliminary approval of the terms of the settlement; (ii) approval of the notice of the proposed settlement to be mailed to the Class members (referred to herein as the "Notice"); (iii) approval of the summary notice of the proposed settlement to be published (referred to herein as the "Summary Notice"); (iv) approval of the Proof of Claim and Release forms; and (v) entry of the Preliminary Approval Order in the form attached to the Stipulation as Exhibit B, setting a final approval hearing date and directing the giving of notice.[1]

## I.____FACTUAL BACKGROUND

This matter involves a securities fraud class action (the "Action")  brought by the purchasers of Veeco securities between April 26, 2004 and February 10, 2005, inclusive  (the "Class Period). The Action was brought against Veeco Instruments Inc. ("Veeco"), and Individual Defendants Edward H. Braun, John F. Rein, Jr., John P. Kiernan, and R. Michael Weiss (collectively, the "Defendants").  The complaint alleged that Defendants artificially inflated the market price of Veeco securities during the Class Period by issuing false and misleading financial statements in the first, second, and third quarters of 2004, which the Company was forced to restate shortly after the Class Period, which the Company attributed to accounting improprieties at its newly-acquired TurboDisc

---

[1]  Each of the documents to be sent to the Class Members and attached to the Stipulation as exhibits are in a form typically used in class actions.

division, and which the Company admitted had concealed the unprofitability of TurboDisc from investors.

As described in further detail below, this Action has been actively litigated for over a year-and-a-half, with extensive motion practice and discovery, and final pre-trial preparations, including a pre-trial hearing before this Court on June 28, 2007, with trial scheduled to begin on July 9, 2007. The Class had been certified, and, pursuant to Fed. R. Civ. P. 23, class members were given notice of the pendency of the Action and trial date, and were given an opportunity to opt-out of the Action. This proposed settlement was achieved following negotiations between the parties, with the assistance of retired Judge, the Honorable Nicholas H. Politan, who had served as a mediator in the case on several occasions.

**A.    The Procedural History Of The Litigation**

The Action was commenced on February 15, 2005 by the filing of a complaint captioned *L.I.S.T., Inc. v. Veeco Instruments Inc.*, Edward H. Braun, and John F. Rein, Jr., C.A. No. 7:05-2189. Additional complaints were filed thereafter in both the Eastern District of New York and the Southern District of New York.

By Order of the Honorable William Terrell Hodges on behalf of the Judicial Panel on Multidistrict Litigation dated May 15, 2005, all of the cases then filed in the Eastern District of New York were transferred to the Southern District of New York and assigned to the Honorable Colleen McMahon for coordinated or consolidated pretrial proceedings with the cases then filed in the Southern District of New York.

By Order dated October 12, 2005, the Court appointed Steelworkers Pension Trust ("Steelworkers") as Lead Plaintiff and Berger & Montague, P.C. as Lead Counsel for the Class.

The Consolidated Amended Class Action Complaint (the "Complaint") filed on November 7, 2005 by Lead Plaintiff Steelworkers Pension Trust (the "Complaint"), which supersedes all prior complaints filed in the Action, alleged claims under sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4 et seq, and named additional Defendants John P. Kiernan and R. Michael Weiss.

The Complaint alleged, among other things, that the Defendants issued false and misleading statements in their financial statements, reports and related press releases and during analyst conference calls for the first, second and third quarters of 2004, which, as Defendants admitted after the Class Period, overstated Veeco's pre-tax earnings by $10.2 million, causing the Company to restate its financial statements for those quarters, and that certain of the Individual Defendants also issued false and misleading certificates of compliance with the Sarbanes-Oxley Act.  The Complaint alleged that Veeco's financial statements during the Class Period concealed the unprofitability and true profit margins and accounting improprieties of Veeco's TurboDisc division, and the fact that TurboDisc had deficient or absent financial controls, and that Veeco's financial statements could not be relied on by the investing public.  The Complaint alleged that these facts were concealed by Defendants during the Class Period, and that the problems were first disclosed to the public on the morning of February 11, 2005, before the market opened, when Veeco announced it would postpone the release of its audited results for the 2004 fourth quarter and full year pending completion of an internal investigation of improper accounting transactions at TurboDisc.

In the announcement, Veeco explained that the investigation focused principally on the value of inventory, accounts payable, liabilities and revenue transactions, and that the investigation would

likely lead to adjustments requiring the restatement of its financial statements for the first three quarters of 2004.  The Complaint alleged that this announcement of the previously undisclosed material information  resulted in more than a 10% drop in the price of Veeco stock, thereby causing damages to Lead Plaintiff and the other members of the Class.

By Order dated March 21, 2006, the Court Denied Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint.  By Order dated April 12, 2006, the Court denied Defendants' Motion for Partial Reconsideration of the Court's March 21, 2006 Order.

In the March 21, 2006 Order, the Court also certified the Class, ordering that this Action should be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class consisting of all persons who purchased the securities of Veeco Instruments Inc., during the period between April 26, 2004 and February 10, 2005 inclusive, and were damaged as a result thereof, excluding from the class Defendants, members of the immediate family of each of the Individual Defendants, any parent, subsidiary, affiliate, officer or director of defendant Veeco, any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors, and assigns of any excluded person.  The Court also certified Lead Plaintiff Steelworkers Pension Trust as class representative, and appointed Berger & Montague, P.C. as class counsel pursuant to Rule 23.

On April 10, 2006, Defendants answered the Consolidated Amended Class Action Complaint, denying all allegations of liability therein, asserting affirmative defenses thereto, and demanding judgment on the merits dismissing the Complaint.  On October 11 and 12, 2006, the parties attempted to mediate the case under the supervision of  Judge Nicholas H. Politan as

5

mediator.  However, the mediation was unsuccessful and the parties resumed discovery, with a trial date set for July 9, 2007.

In preparation for trial, the parties prepared extensive pretrial submissions and filed numerous motions *in limine*.  On June 28, 2007, the Court held a final pre-trial conference, during which the Court ruled, *inter alia*, on the admissibility of exhibits and on the motions *in limine*.  Among the Court's rulings on the motions *in limine*, the Court ruled that members of the Class who purchased Veeco stock during the Class Period and who either sold those shares at a profit after the Class Period, or who retained those shares past the point when the price of Veeco stock first recovered to the price at which those shares were purchased were not damaged by Defendants' conduct.

Soon thereafter,  the parties began settlement discussions, with the assistance of mediator Politan.  On July 5, 2007, the parties entered into a Memorandum of Understanding (the "MOU") to settle the Action for $5.5 million in cash.

## B.    Extensive Discovery Was Conducted

Following the denial of the motion to dismiss in March 2006, extensive fact and expert discovery began.   Lead Plaintiff reviewed about 225,000 pages of documents produced by Defendants in response to Lead Plaintiff's document requests, including documents produced as a result of Lead Plaintiff's motion to compel Defendants' production of documents on backup tapes. Lead Plaintiff also subpoenaed documents from 26 third-parties - including Veeco's outside auditor Ernst & Young, Veeco customers and suppliers, and analysts who covered Veeco during the Class period - and received and reviewed approximately ten thousand pages of documents from Ernst & Young  alone, and hundreds of pages more from the other third parties.

Lead Plaintiff took and defended many depositions in this case, beginning with Lead Plaintiff's defense of the depositions of Lead Plaintiff/class representative Steelworkers Pension Trust and its asset manager in connection with Lead Plaintiff's motion for class certification. During fact discovery, Lead Plaintiff conducted ten days of depositions, including the depositions of Individual Defendants Braun, Rein and Kiernan, three Ernst & Young partners involved in Veeco's audit before and during the Class Period, former TurboDisc controller Bruce Huff, to whom the Company attributed the improprieties leading to the restatement, and Veeco's internal auditors during the Class Period, Gary Reifert and Herman Birnbaum. Lead Plaintiff also deposed Thomas Vollmer, the engagement partner at Jefferson Wells, hired to conduct an internal investigation of TurboDisc accounting.

The parties also engaged in other discovery, including serving interrogatories and requests for admission upon Defendants. In addition, the parties also conducted expert discovery, exchanging the reports of their respective accounting and damages experts, and deposing one another's damages expert. Lead Plaintiff also defended the deposition of its accounting expert.

Finally, the parties completed substantial preparation for trial, including preparation of all the exhibits to the pre-trial order, which were submitted to the Court on June 6, 2007, and also filed and responded to numerous motions *in limine*. The parties attended a pre-trial conference on June 28, 2007 and were prepared to pick a jury on July 9, 2007.

In sum, the parties had conducted almost all of the fact and expert discovery necessary for trial. There is no question the parties were fully informed of the strengths and weaknesses of the parties' respective positions.

**C.      Extensive Motion Practice Was Conducted**

In addition to the motion to dismiss and the motion for class certification, the parties engaged in extensive motion practice, including a number of hard-fought discovery motions in this case before the Magistrate, most notably, Plaintiff's motion to compel Defendants to produce documents concerning the internal investigation of TurboDisc by Veeco and Jefferson Wells, filed in August 2006, as well as oral argument on that motion, and subsequent appeal of the decision. Each party also filed a number of motions *in limine* on June 6, 2007, and responses thereto a week later.

**D.      Class Certification Was Granted And A Notice of Pendency Of The Action Was Sent To The Class**

On November 7, 2005, Lead Plaintiff moved for certification of the Class under Fed. R. Civ. P. 23. In connection with the motion, Lead Plaintiff produced documents in response to Defendants' requests, and defended the depositions of the proposed Class Representative, Lead Plaintiff Steelworkers, and its asset manager. The Court certified the Class in its Order dated March 21, 2006, and appointed the Steelworkers as Class Representative, and Berger & Montague as Class Counsel. However, the Court ruled that the Class Period would begin on April 26, 2004 (rather than November 3, 2003).

Pursuant to the Court's Order on May 15, 2007, Lead Plaintiff caused a Notice of Pendency of Class Action (the "Initial Notice") to be sent to putative class members, defining the Class as defined by the Court in its March 21, 2006 Order, as follows:

> **All persons who purchased the securities of Veeco Instruments, Inc. ("Veeco"), during the period between April 26, 2004 and February 10, 2005 inclusive (the "Class Period"), and were damaged as a result thereof. Excluded from the Class are the Defendants, members of the immediate family of each of the Individual Defendants, any parent, subsidiary, affiliate, officer or director of defendant**

> **Veeco, any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors, and assigns of any excluded person**.

Lead Plaintiff's counsel, with the approval of the Court, retained Heffler, Radetich & Saitta LLP ("HRS") as the notice administrator.  Beginning on June 1, 2007, HRS  mailed out more than 11,390 notices of the action.  HRS also caused the summary notice of the Action to be published in *The Wall Street Journal* on June 8, 2007.  The Initial Notice provided class members with an opportunity to opt-out by July 6, 2007.  As of that date, only two class members opted out.[2] Defendants and the Court were advised of the very small number of opt-outs.

### E.    The Merits Of The Case Were Sharply Disputed

The claims in this case focus on whether Defendants issued false and misleading financial statements with scienter during the Class Period in Veeco's quarterly reports filed with the SEC for the first, second, and third quarters of 2004, and in other statements concerning the Company's financial performance in press releases and analyst conference calls during the Class Period, and whether certain of the Individual Defendants issued false and misleading certificates of compliance with the Sarbanes-Oxley Act in those Forms 10-Q, and whether the price of Veeco securities was inflated during the Class Period and whether Defendants' disclosure of  the truth before the market opened on the morning of February 11, 2005 caused the price of Veeco stock to fall, thereby damaging Plaintiff and the other class members.  The merits of this claim have been sharply contested in these actions, with Defendants asserting that the claims are without basis and that defendants are not liable for any damages.  Defendants continue to assert that even if Veeco's financial statements

---

[2]  One of the opt-outs asserted that he bought Veeco stock on June 7, 2004 at a cost of $2,603, and sold on April 27, 2006 for $2,230.73, for a loss of $372.27, without indicating the number of shares bought or sold.  The other, a couple, reported that they bought 100 shares of Veeco on December 10, 2004, without providing any further information.

were restated for three quarters because of accounting errors at TurboDisc, there is no proof that Defendants acted with scienter. In addition, the parties - through their experts - disagreed on the proper theory of damages under the law in securities actions, even if Defendants were found liable, and Lead Plaintiff was constrained in its ability to prove damages of certain Class members as a result of the Court's ruling on Defendants' motion *in limine,* and because the largest decline in Veeco stock during the Class Period could not conclusively be linked to any actionable conduct by Defendants.

Lead Plaintiff believes that ample evidence exists to support their claims. Nevertheless, Lead Plaintiffs recognize that these are sharply disputed claims, and ultimately a court or a jury may find that the Defendants did not violate the federal securities laws. Lead Plaintiff recognize that shareholder class action litigation is notably unpredictable, and that a jury could be persuaded by Defendants' arguments that Lead Plaintiff had not proven scienter for all or even some of the Class period, or for any of the Individual Defendants.

### F.      The Terms Of The Proposed $5,500,000 Settlement

The Stipulation provides for a payment in the amount of $5,500,000 (the "Settlement Amount") in exchange for full releases of the Defendants and related parties. Upon the preliminary approval of the proposed settlement, the Settlement Amount will be deposited into an interest bearing account with the interest on the Settlement Amount accruing for the benefit of the Class. The Settlement Fund will be administered as a Qualified Settlement Fund under the Internal Revenue Code. As described in detail below, this proposed settlement was reached after extensive and thorough discovery and after arm's-length negotiation, with the assistance of the mediator, the Honorable Nicholas H. Politan.

10

### G.    The Settlement Was The Product Of Arm's-Length Negotiation

In addition to providing a substantial monetary recovery, the settlement was the product of arm's-length negotiation. The parties initially agreed to mediate in mid-October 2006, and retained the Honorable Nicholas H. Politan as the mediator. In preparation for the mediation, the parties prepared extensive mediation statements on liability and damages, as well as extensive compendia of supporting exhibits, and the parties participated in an intense two-day mediation session. This mediation session did not result in a settlement, and the parties resumed their discovery schedule. On June 18, 2007, the parties again participated in a mediation session with the assistance of Judge Politan. With the trial about to begin on July 9, 2007, the parties were able to reach this proposed settlement after arm's-length negotiations between Lead Plaintiff's counsel and counsel for Defendants as well as counsel for Defendants' insurer. On July 5, 2007, the parties entered into a Memorandum of Understanding (the "MOU") documenting the principal terms of their agreement to settle the Action.

## II.    ARGUMENT

### A.    The Motion For Preliminary Approval Of The Proposed Class Action Settlement Meets The Relevant Legal Standard

#### 1.    The Role Of The Court

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any settlement, voluntary dismissal or compromise of claims brought on a class basis. *See* Fed. R. Civ. P. 23(e)(1)(A). Preliminary approval of the settlement is the first step in the two-step review process, the second step consisting of a subsequent "fairness hearing." *In re Initial Pub. Offering Sec. Litig.*, 2007 U.S. Dist. LEXIS 19632, at *21 (S.D.N.Y. Feburary 28, 2007)(*"IPO"*). "The court first must

11

review the proposed terms of settlement and make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." *Id.* (*citing Manual for Complex Litigation, Fourth* § 21.632).

Approval of a proposed settlement is a matter within the broad discretion of the district court. *In re Prudential Sec. Inc. Ltd. Pships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995). "In exercising that discretion, though, 'it is axiomatic that the law encourages settlement of disputes.'" *IPO*, 2007 U.S. Dist. LEXIS 19632, at *7 *(citing Bano v. Union Carbide Corp.,* 273 F. 3d 120, 129 (2d Cir. 2001). Moreover, "[t]he law favors settlements of class actions no less than of other cases." *In re American Bank Note Holographics, Inc. Sec. Litig.,* 127 F. Supp. 2d 418, 423 (S.D.N.Y. 2001)(McMahon, J.)(collecting cases in decision approving final settlement); *Prudential*, 163 F.R.D. at 209 ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.")(citations omitted). "There is a strong initial presumption that a proposed settlement negotiated during the course of litigation is 'fair and reasonable.'" *Strougo v. Bassini,* 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003) (citation omitted).

### 2. Criteria To Be Considered In Deciding Preliminary Approval Of The Class Settlement

The criteria for evaluating a request for preliminary approval of a settlement is summarized as follows:

> Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.

12

*Initial Pub. Offering,* 2007 U.S. Dist. LEXIS 19632, at * 22)(citing *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)(citing *Manual for Complex Litigation* (Third) §30.41 (1995)); *Prudential*, 163 F.R.D. at 209.

The role of the Court at the preliminary approval stage is to examine the materials submitted and decide whether the settlement is "fair, reasonable and adequate" on its face. *Prudential*, 163 F.R.D. at 209. At this stage, "the Court need only find that the proposed settlement fits 'within the range of possible approval.'" *Id.* at 210 (citation omitted).[3]

Preliminary approval does not require the district court to answer the ultimate question of whether a proposed settlement is fair, reasonable, and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement. *See 3B James Wm. Moore*, et al., Moore's Federal Practice 23.8102-1, at 23-479 (2d ed 1993). Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement . . . may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Housing Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970). At the preliminary approval stage, "[t]he Court's function . . . is 'to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.'" *Prudential,* 163 F.R.D. at 209 (citation omitted).

In considering a potential settlement, the trial court need not reach any ultimate conclusions regarding substantive factual or legal issues of plaintiff's claims. *See Maley v. Del Global Techs.*

---

[3] *See Manual for Complex Litigation* (Fourth) §40.42 (the primary question raised by a request for preliminary approval is whether a proposed settlement is "within the range of reasonableness").

*Corp.*, 186 F. Supp. 2d 358, 361 (S.D.N.Y. 2002) (McMahon, J.) ("It is not necessary in order to determine whether an agreement of settlement and compromise shall be approved that the court try the case which is before it for settlement . . . Such procedure would emasculate the very purpose for which settlements are made.") quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974)). Thus, a district court, in reviewing a settlement proposal, need not engage in a trial of the merits, for the purpose of settlement is precisely to avoid such a trial. Nor should the court "make the proponents of the agreement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972).

Courts give substantial weight to the experience of the attorneys who prosecuted the case and negotiated the settlement. *See Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). As the court explained in *Lyons v. Marrud, Inc.*, 1972 U.S. Dist. LEXIS 13401, at *5 (S.D.N.Y. June 6, 1972), "[e]xperienced and competent counsel have assessed these problems and the probability of success on the merits. They have concluded that compromise is well-advised and necessary. The parties' decision regarding the respective merits of their positions has an important bearing on this case."

In this case, the proposed settlement has no obvious deficiencies. The settlement does not grant the representative plaintiff preferential treatment or seek excessive attorneys' fees. Further, there is no indication that the settlement is collusive, because experienced counsel for Lead Plaintiff and Defendants were engaged in hard-fought litigation for over a year-and-a-half, and had reached the eve of trial, and finally reached the settlement after arm's-length and well-considered negotiations,

including mediation supervised by Judge Politan on two occasions.  The negotiations were informed by the knowledge Lead Counsel had gained after extensive discovery, including reviewing and analyzing hundreds of thousands of documents obtained from Defendants and non-parties through discovery, depositions, and through consultation with Lead Plaintiff's accounting and damages experts and substantial preparation for trial, including selection of trial exhibits and witnesses.

In short, the parties' counsel - who litigated this case to the eve of trial, and knew every single fact and all of the  strengths and weaknesses of their respective cases - have concluded that the proposed settlement of $5.5 million is in the best interests of their respective clients.  Under these circumstances, the presumption of fairness attaches to the proposed settlement.  *See Del Global Technologies*, 186 F. Supp. 2d at 366-67 ("'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.")(citation omitted);  *In re Excess Value Ins. Coverage Litig.*, 2004 U.S. Dist. LEXIS 14822, at *34 (S.D.N.Y. July 30, 2004) ("Where 'the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness.'") (citation omitted).  *Banyai v. Mazur,* 2007 U.S. Dist. LEXIS 22342, at **27-28 (S.D.N.Y. March 27, 2007 )("If all discovery has been completed and the case is ready to go to trial, the court obviously has sufficient evidence to determine the adequacy of the settlement . . . The history of this case leads the Court to find that Class Counsel understand the merits - - and pitfalls - - of their positions and adequately developed those claims before agreeing to the proposed settlement.").[4]

---

[4]  *See also In re Med X-Ray Film Antitrust Litig.,* 1997 U.S. Dist. LEXIS 21936, at *20 (E.D.N.Y. Dec. 10, 1997) (preliminary approval granted where "there is no indication that [the settlement is] collusive, as the parties continued to actively litigate this action up through the time of settlement").

Lead Plaintiff also considered the reasonableness of the settlement in view of the constraints they faced in proving their theory of damages, even if they succeeded in proving Defendants' liability. First, Lead Plaintiff was unable to conclusively link the largest decline in price of Veeco stock during the Class Period in mid-October 2004 to any actionable conduct by Defendants. Second, this Court's ruling on Defendants' Motion *in Limine* precluded certain class members from showing that they suffered any economic loss and reduced the calculation of class-wide damages, although the ruling did not affect the damages-per-share amount calculated by Lead Plaintiff's expert.

Based on their familiarity with the factual and legal issues, the parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation, including the possibility of a jury verdict in Defendants' favor. The parties understood that "[l]itigation inherently involves risks. Indeed, 'if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome'." *Banyai v. Mazur*, 2007 U.S. Dist. LEXIS 22342, at *29 (S.D.N.Y. March 27, 2007)(citations omitted). *Prudential*, 163 F.R.D. at 210 ("Instead of the lengthy, costly and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery for the Class. . . it may be preferable 'to take the bird in the hand instead of the prospective flock in the bush.'")(citation omitted); *In re American Bank Note,* 127 F. Supp. 2d at 424- 425 ("These Actions, like most securities fraud cases, are complex and challenging as regards both liability and damages. . .Settlement at this juncture results in a substantial and tangible present recovery, without the attendant risk and delay of trial").

The proposed settlement does not grant preferential treatment to the class representative, seeking only the reasonable costs and expenses it incurred as permitted by the PSLRA. 15 U.S.C. §

---

78 u-4 (a)(4). The proposed Plan of Allocation set forth in the class notice allocates the proceeds of the settlement among the class members under a fair and equitable formula. *See* Section III below.

In light of these considerations, Lead Plaintiff believes that the $5.5 million settlement is "within the range of possible approval," and "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *Prudential*, 163 F.R.D. at 209. The Court should therefore grant preliminary approval of the settlement and direct that notice of it be given to the Class. *See NASDAQ,* 176 F.R.D. at 102 ("The standards for preliminary approval are met in this case. The settlements are the result of serious negotiation; no favoring of class representatives or any segment of the class is evident. The settlements are "'at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard.'")(*citing Baldwin-United Corp.*, 105 F.R.D. 475, 482 (S.D.N.Y. 1984)).

## III.    THE PLAN OF ALLOCATION

Under the plan of allocation, an independent claims administrator, HRS,[5] will calculate each claimant's "recognized loss" based on the class member's proof of claim. The proposed plan of allocation is fully set forth in the class notice as follows:

1.    The $5,500,000 cash settlement amount and the interest earned thereon shall be the "Gross Settlement Fund." The Gross Settlement Fund, less all taxes, approved costs, fees and expenses (the "Net Settlement Fund") shall be distributed to members of the Class who submit acceptable Proofs of Claim ("Authorized Claimants").

2.    The Net Settlement Fund will be allocated among the Authorized Claimants in accordance with this "Plan of Allocation." The amount so allocated to each Authorized Claimant constitutes and is referred to herein as the Authorized Claimant's "Payable Claim." The Plan of Allocation is based upon Lead Plaintiff's Counsel's assessment of the merits and

---

[5]  HRS is the notice administrator selected by Lead Counsel and approved by the Court that provided the earlier initial Notice to the class of the pendency of this action in June 2007.

relative strengths and weaknesses, including recoverable damages, of the claims of the members of the Class.

3.      The Payable Claim will be calculated so that each Authorized Claimant shall receive, on a proportionate basis, that share of the Net Settlement Fund that the Authorized Claimant's Recognized Loss (as defined below) bears to the total Recognized Losses of all Authorized Claimants, subject to the further provisions of this Plan of Allocation set forth below.

4.      The formula for Recognized Loss is based on the decline in the price of Veeco stock following the announcement prior to the opening of the market on February 11, 2005 that the Company expected to restate its financial statements for the first three quarters of 2004. The maximum damage that any Class Member suffered is set at $3.75/share, based on the drop in the price of Veeco common stock in the four trading days following that disclosure of accounting irregularities on February 11, 2005. Further, the Court ruled, on June 28, 2007, that no damages may be attributable to Defendants' alleged misrepresentations where a Class Member either sold his shares after the Class Period for a profit or held his shares of Veeco common stock past the point at which the price of Veeco common stock first recovered to the price at which the shares were purchased. The Plan of Allocation takes into consideration that (1) on February 17, 2005, Veeco common stock traded at $15.11 per share, (2) on August 3, 2005, Veeco common stock traded at $21.52 per share, (3) on April 21, 2006, Veeco common stock traded at $25.17 per share, and (4) on May 9, 2006, Veeco common stock traded at a price equal to, or greater than, any price at which Veeco common stock traded at during the Class Period. The Plan of Allocation takes into consideration the prices at which Veeco common stock traded on these dates and limits the Recognized Loss of Authorized Claimants accordingly.

5.      An Authorized Claimant's Recognized Loss is determined by the date(s) the Authorized Claimant purchased or sold any of Veeco's securities. For shares of Veeco's common stock that were purchased on the open market from April 26, 2004 to February 10, 2005, inclusive, the Recognized Loss is as follows:

    (a)      for shares of Veeco's common stock sold at a loss between February 11, 2005 and August 2, 2005, inclusive, the Recognized Loss shall be the smaller of (1) the difference between the purchase price and the sale price, (2) the difference between the purchase price and $15.11, or (3) $3.75/share;

    (b)      for shares of Veeco's common stock sold at a loss between August 3, 2005 and April 20, 2006, inclusive, the Recognized Loss shall be the smaller of (1) the difference between the purchase price and the sale price, (2) the difference between the purchase price and $21.52, or (3) $3.75/share;

    (c)      for shares of Veeco's common stock sold at a loss between April 21, 2006 and May 8, 2006, inclusive, the Recognized Loss shall be the smaller of (1) the difference

18

between the purchase price and the sale price, (2) the difference between the purchase price and $25.17, or (3) $3.75/share;

(d)  for shares of Veeco's common stock sold before February 11, 2005, the Recognized Loss shall be zero; and

(e)  for shares of Veeco's common stock sold after May 8, 2006, the Recognized Loss shall be zero.

Lead Plaintiff, through Lead Counsel, determined the appropriate allocation of damages. The plan of allocation follows the Supreme Court's decision in *Dura Pharmaceuticals*, and requires that the claimant must have purchased the security during the class period and held it on the day of corrective disclosure, recognizing that Class Members who bought during the Class Period and sold their shares after the Class Period suffered an economic loss. *See, e.g., Dura Pharm. Inc. v. Broudo*, 544 U.S. 336 (2005). The plan of allocation also recognizes that certain class members will have no recognized loss in accordance with this Court's decision on Defendants' motion *in limine* regarding damages, in that, the plan of allocation takes into account that (i) any shares of class members sold after the corrective disclosure at a price higher than or equal to the initial purchase price, and (ii) any shares of class members who chose to retain their shares past the point when the stock price first recovered to the price at which the shares were purchased, can prove no economic loss.

The plan of allocation fairly, equitably and adequately allocate the proceeds of the settlement among the class members with a minimum of complication, ensuring efficiency in claims administration. It deserves the Court's approval. To warrant approval, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *In re Am. Bank Note*, 127 F. Supp. 2d at 429-430; *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d at 367 (same).

19

## IV.     SECOND OPPORTUNITY TO OPT-OUT

Initial notice of this Action, including the granting of class certification and an opportunity to opt-out, was previously provided.  Beginning on June 1, 2007, a total of 11,390 notices of pendency were sent out by the notice administrator; in response, only two class members elected to opt-out.

Rule 23(e)(3) provides as follows:

> In an action previously certified as a class action under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

Based on this provision of Rule 23, the proposed notice provides a second opportunity for class members to opt-out.

The Stipulation also provides that if a certain percentage of the shareholders elect to opt out of the settlement, then the Defendants have the right to terminate the settlement (Stipulation at ¶G.2.). As is typical in class actions, the number of shareholders (i.e. the given amount of losses) who must opt out of the settlement to trigger the settling defendants' right to terminate the settlement is set forth in a separate agreement and is not disclosed to the public.[6]

## V.     THE PROPOSED CLASS NOTICE

If the Court preliminarily approves the settlement, it must then direct the preparation of notice informing class members of the proposed settlement and the date of the final fairness hearing with the information required by the notice requirements of Rule 23 and the Private Securities Litigation

---

[6] If the Court would like to see the separate agreement, we will promptly provide it to chambers. We respectfully request either that the separate agreement not be filed or be filed under seal. Consistent with Fed. R. Civ. P. 23(e)(2), the Stipulation identifies the existence of this agreement.

20

Reform Act ("PSLRA"). *IPO*, 2007 U.S. Dis. LEXIS 19632, at *22 (citing Fed. R. P. 23(e)(1)(B), and 15 U.S.C. § 78u-4(a)(7)).

As stated in Section IV above, in accordance with Rule 23 and the PSLRA, Lead Counsel, in June 2007, caused an initial notice to be given to the class members and summary notice to be published in the *Wall Street Journal*, informing class members of the pendency of these actions and the certification of the class, and the opportunity to opt-out. Lead counsel has now prepared and submitted as an attachment to the Stipulation, the Notice of final settlement which fully complies with the requirements of Rule 23 and the PSLRA for notice of settlement. The Notice fully describes the proposed settlement, the fees and expenses sought, the plan of allocation, that certain members of the Class have no damages, and class members' rights to seek exclusion or to participate and/or object to the proposed settlement, fees and/or expenses.

Attached as Exhibit B to the Stipulation is a proposed Preliminary Approval Order, in which Lead Plaintiff asks the Court to schedule a final settlement hearing (the "Settlement Hearing") to determine whether the proposed settlement should be approved as fair, reasonable and adequate; whether an order approving the settlements should be entered and the Action dismissed; whether the plans of allocation of the Settlement Amount should be approved; whether to award attorneys' fees and reimbursement of expenses to Lead Plaintiff's Counsel and whether the award of expenses to the Class Representatives should be approved. In accordance with the Court's instructions during its August 15, 2007 conference with the parties, the Preliminary Approval Order sets November 2, 2007 as the date of the Settlement Hearing. Similarly, in keeping with the Court's instructions, the Preliminary Approval Order also sets October 19, 2007 as the deadline for Members of the Class to opt-out of the Class or to object to the Settlement, the Plan of Allocation, the Order and Final

Judgment, and the application for counsel fees and expenses, October 26, 2007 as the deadline for all papers in support of the Settlement to be filed with the Court, and December 3, 2007 as the deadline for Members of the Class to submit Proof of Claim and Release forms.

Within twenty (20) days from the entry of the Preliminary Approval Order, Lead Plaintiff's Lead Counsel shall cause copies of the Notice, substantially in the form annexed as Exhibit B-1 to the Stipulation, to be mailed to all reasonably identifiable Class members (Preliminary Approval Order at  6(a)).  Within seven (7) days after mailing of the Notice as described above (or, within twenty-seven (27) days from the entry of the Preliminary Approval Order), Lead Plaintiff's Lead Counsel shall cause the Summary Notice, substantially in the form annexed as Exhibit B-3 to the Stipulation, to be published in *The Wall Street Journal* (Preliminary Approval Order at  6(b)).

Lead Plaintiff believes that the proposed Notice satisfies the notice requirements of Fed. R. Civ. P. 23 and meets the standards for approval of this Court.  The Notice provides Class Members with a "fair understanding of the [Action], the parties and the nature of the settlement.  The Notice also clearly details which investors are eligible to participate in the settlement and the rights and obligations that accompany such participation." *Prudential*, 163 F.R.D. at 210-211.  *See* Fed. R. Civ. P. 23(2)(B).  The Notice also clearly informs investors of the  right to opt-out of the settlement and the way to do so.  *See* Fed. R. Civ. P. 23(2)(B); *see also IPO* 2007 U.S. Dist. LEXIS, at *23 ("the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.").  The Notice also informs the Class Members that Lead Counsel will ask the Court to approve payment of their fees of 30%, and will seek reimbursement of their expenses in an amount of no more than $775,000, and will seek reimbursement of Lead Plaintiff's reasonable costs and expenses for

representation of the Class pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4). Under the terms of the Settlement, the Court's approval of the Settlement is not conditioned on its approval of the application for attorneys' fees and expenses and Lead Plaintiff's costs and expenses. Furthermore, the schedule for mailing the Notice and publishing the Summary Notice, when considered in connection with the Court's schedule for Members of the Class to opt-out of the Class, submit objections to the Settlement and/or submit Proof of Claim and Release forms, will provide Members of the Class sufficient time to exercise their rights in this Action.

## VI.    CONCLUSION

Accordingly, based on the Stipulation, the attachments to the Stipulation, this memorandum of law, and the prior proceedings in this matter, Lead Plaintiff, with the consent of Defendants, respectfully request that the Court grant preliminary approval of the proposed settlement and approve the Preliminary Approval Order, the Notice, the Summary Notice, and the forms of the Proof of Claim and Release.

Dated: August 16, 2007                                    **BERGER & MONTAGUE, P.C.**


By:     */s/ Phyllis M. Parker*
        Sherrie R. Savett
        Carole A. Broderick
        Arthur Stock
        Phyllis M. Parker
        Jeffrey L. Osterwise
        1622 Locust Street
        Philadelphia, PA 19103
        (215) 875-3000

        ***Lead Counsel for Lead Plaintiff Steelworkers Pension Trust and the Class***

malta417210-019.wpd